FAY GARDENS MOBILE HOME PARK, APPELLANT, *v.* NEWMAN ET AL., APPELLEES.

(Nos. 1088 and 1089—Decided December 5, 1983.)

*Messrs. Graydon, Head & Ritchey* and *Mr. Anthony G. Covatta,* for appellant.

*Mr. Michael A. Kennedy,* for appellees Richard and Peggy Hunt.

*Messrs. White, Getgey & Meyer* and *Ms. Sherri Goren Slovin,* for appellee Edwin A. Newman.

*Per Curiam.* This cause came on to be heard upon the appeal, transcript of the docket, journal entries and original papers from the County Court, Civil Division, Clermont County.

Two separate actions in forcible entry and detainer were brought by the plaintiff, Fay Gardens Mobile Home Park, in the Clermont County Court. One of the actions was against Richard and Peggy Hunt who, after denying the allegations contained in the complaint, claimed the defense of retaliation and the defense of failure of the plaintiff to offer the opportunity to sign a rental agreement for a minimum period of one year. The defendants, Richard and Peggy Hunt ("Hunts") also included in their answer a counterclaim for retaliation, a counterclaim for breach of an implied promise or warranty that the premises would be maintained in a habitable condition, a counterclaim for failure to keep the premises in a sanitary condition, and a counterclaim for failure to offer the opportunity to sign a rental

agreement for a minimum of one year. The total amount demanded in the counterclaim as damages was $8,100 plus reasonable attorney fees.

The other action in forcible entry and detainer was against one Edwin A. Newman who, in his answer, denied the allegations of plaintiff's amended complaint and set forth as defenses the claim that the complaint failed to state a cause of action upon which relief can be granted, that plaintiff, by accepting late payments of rent in the past had waived the right to evict him for late payment, and that the filing of the action was in retaliation for his joining and organizing with other tenants in order to deal collectively with plaintiff with regard to the condition of the premises. The answer of Newman also contained a counterclaim for retaliation, a counterclaim for breach of an implied warranty of habitability of the premises, a counterclaim for failure to maintain all septic systems, sanitary and storm sewers in working order, and a counterclaim for failure to permit the defendant to enter into a rental agreement for a minimum of one year. Newman demanded the sum of $1,765 as damages plus reasonable attorney fees.

The two cases were scheduled to be tried jointly and, prior to trial, the trial judge called the attention of counsel to the monetary jurisdiction of the county court, which was $3,000.

The attorney for Richard and Peggy Hunt said that, based on the information obtained by discovery, the counterclaim would be reduced to $4,398. He then pointed out that since there were two parties to the counterclaim, for purposes of jurisdiction, each party would claim one-half of the amount set forth in the counterclaim, and, on that basis, the court could award a total of $6,000 to the Hunts.

After objection by plaintiff's counsel, the trial judge informed the attorney for the Hunts that such a division of the claim was not possible, after which the attorney for the Hunts agreed to proceed on the premise that they would "agree to be legally limited to the three thousand" dollars if the jury came back with a verdict for more than $3,000.

During the pretrial discussion, the attorney for Newman consented to an order granting the plaintiff possession of the premises, but demanded the right to proceed on the counterclaim for retaliation. The case was tried before a jury which returned a verdict in favor of Newman in the sum of $1,500 plus attorney fees in the sum of $3,600.

The jury also returned a verdict in favor of the Hunts in the sum of $1,125 plus attorney fees in the sum of $3,600. The trial judge then ordered each verdict reduced to the sum of $3,000.

It is from the verdict of the jury as reduced by the trial judge that plaintiff appeals. The assignments of error are as follows:

"I. The trial court erred to the prejudice of plaintiff in overruling its motion for a directed verdict on the issue of retaliation against defendant Newman.

"II. The trial court erred to the prejudice of plaintiff in overruling its motion for judgment notwithstanding the verdict on the issue of retaliation against both defendants.

"III. The trial court erred to the prejudice of plaintiff in overruling its motion for a new trial.

"IV. The trial court erred to the prejudice of plaintiff in allowing, over its objection, the use of affidavits as to time spent on the case by the defendants' attorneys and the hourly rate of one of them."

Before responding to the plaintiff's assignments of error, we raise *sua sponte* the question of the jurisdiction of the trial court over the counterclaim of the Hunts. R.C. 1911.011(E) provides, "[i]n any action in a county court in which the amount claimed by any defen-

dant in any statement of counterclaim exceeds the jurisdictional amount defined in section 1909.04 of the Revised Code, the judge *shall* certify the proceedings in the case to the court of common pleas." (Emphasis added.) R.C. 1909.04 reads as follows:

"Under the restrictions and limitations of sections 1909.01 to 1909.10 of the Revised Code, judges of county courts have exclusive original jurisdiction in civil actions for the recovery of sums not exceeding five hundred dollars and original jurisdiction in civil actions for the recovery of sums not exceeding three thousand dollars."

Thus, the trial court was without jurisdiction to rule on plaintiff's motion for a directed verdict or to hear the counterclaim of the Hunts, as the entire action should have been certified to the court of common pleas. *Richwood Homes, Inc.* v. *Brown* (1981), 3 Ohio App. 3d 204. Therefore, the judgment in favor of the Hunts is reversed and remanded to the Clermont County Court with instructions to transfer that action to the court of common pleas for determination of all issues in the entire case.

We will now turn our attention to the plaintiff's assignments of error as they apply to Newman, whose counterclaim appears on its face to have been within the monetary jurisdiction of the trial court.

In response to the plaintiff's fourth assignment of error, which we perceive to be an objection to the allowance of unreasonable attorney fees as well as an objection to the type of evidence which was presented to the jury in support of the claim of these fees, we find that the attempt of the attorney for Newman to charge the plaintiff the sum of $3,600 in fees raises serious legal and ethical questions. It is disturbing to see the practice of law evolve into a business that penalizes its adversaries. Certainly, no lawyer would expect to do so much work for his client in the defense of an action to evict the client from a mobile home park as to justify a fee of $3,600 for his services. Why, then, should he expect to charge so much when it is the adversary who pays? Is this to be in the form of a penalty? If so, we cannot condone such charges. R.C. 3733.09(B) permits the recovery of "actual damages together with *reasonable attorneys fees*" for retaliation on the part of a park operator. (Emphasis added.) There is no authority for the recovery of punitive damages. Therefore, there is no authority for the award of attorney fees which are punitive in nature. Instead, the award of attorney fees must be limited to that which the attorney would have charged the client in the absence of a statutory provision for the recovery of attorney fees by the client.

Also, the Code of Professional Responsibility does not permit fees that are in the form of a penalty for one's adversary. Instead, the code provides that fees must be *reasonable* and should be governed in part by the *result obtained.* If a fee charged a client must meet these requirements, the fee assessed against the adversary must likewise meet the same test. It has been held that if the recovery is zero, no attorney fees can be awarded even though the statute which gives rise to the action provides for the recovery of reasonable attorney fees. *Dyche Real Estate Fund* v. *Graves* (1978), 55 Ohio App. 2d 153 [9 O.O.3d 321]. On that basis we are unable to comprehend any theory upon which a lawyer can justify a fee of $3,600 for obtaining a judgment in the sum of $1,500.

We now direct our attention to the question of whether the affidavit of Sherri Slovin, the attorney for Newman, was admissible into evidence for the purpose of establishing the time spent on Newman's case.[1]

---

[1] Slovin, the attorney for Newman, in an attempt to establish the basis for her fee, called on Donald White, a member of the Clermont County Bar, as an expert witness.

We observe that the affiant was available in the courtroom, but chose not to testify. Consequently, there was no cross-examination of counsel as to the number of hours expended, as to the need for the amount of time alleged to have been devoted to the case, or as to the need for the services of a professional for all of those hours. Thus, the affidavit was clearly hearsay as defined in Evid. R. 801(C), which reads as follows:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Therefore, the affidavit was not admissible into evidence. Evid. R. 802. Thus, the plaintiff's fourth assignment of error is well-taken and we sustain the same.

In the first assignment of error, plaintiff argues that a tenant, who is in default for nonpayment of rent cannot, after having consented to judgment against him in the forcible entry and detainer action, maintain an action based on a counterclaim for retaliation. However, Newman maintains that although retaliation may not be a defense to a forcible entry and detainer action, it nonetheless constitutes a valid counterclaim even though the claimant is in default in the payment of rent.

R.C. 1923.061(B), relating to forcible entry and detainer actions, provides that:

"* * * In an action for possession of residential premises based upon nonpayment of the rent or in an action for rent when the tenant is in possession, the tenant may counterclaim for any amount he *may* recover under the rental agreement or under Chapter 3733. or 5321. of the Revised Code.* * *"

Consequently, since a house trailer, or mobile home, is the subject of the action, we must examine the provision of R.C. Chapter 3733 in order to determine whether a counterclaim for retaliation can be maintained against the plaintiff under these circumstances. If the claim for retaliation is permitted under R.C. Chapter 3733, a counterclaim for retaliation is proper in an action for forcible entry and detainer under R.C. Chapter 1923.

R.C. 3733.09(A) provides, in relevant part, that "[s]ubject to section *3733.091 of the Revised Code,* a park operator shall not retaliate against a tenant by * * * bringing * * * an action for possession of the tenant's premises * * *." (Emphasis added.) If the park operator violates the prohibition against retaliation, the tenant *may* recover from the park operator actual damages which were caused by the retaliation. In addition, the tenant may recover *reasonable* attorneys fees. Although there is a prohibition against retaliatory action by the park operator, the park operator's right to maintain the forcible entry and detainer action is preserved under certain enumerated circumstances.

R.C. 3733.091(A) provides, in relevant part, that "[n]otwithstanding section 3733.09 of the Revised Code [prohibition against retaliation], a park operator may bring an action under Chapter 1923. [forcible entry and detainer] of the Revised Code for possession of the premises if: * * * [t]he tenant is in default in the payment of rent; * * *." (Emphasis added.) Further, and more relevant to our inquiry, division (B) of the same section provides that "[t]he maintenance of an action by the park operator under this section does not prevent the tenant from recovering damages for any violation by the park operator of the rental agreement or of section

---

Slovin's affidavit, showing the time spent on Newman's case, was introduced into evidence for the purpose of establishing the number of hours Slovin spent in the preparation of Newman's case. White found the hours reasonable for the type of case and testified as to a reasonable hourly rate.

3733.10 of the Revised Code." Thus, although section (B) of R.C. 3733.091 expressly allows the defendant-tenant, in response to an action in forcible entry and detainer, to recover damages for the violation by the plaintiff-park operator of any of the obligations imposed upon the park operator by R.C. 3733.10, section (B) does not expressly allow the tenant to recover damages for the park operator's retaliation in violation of R.C. 3733.09.

We find that the General Assembly has failed to make specific provisions for the tenant to maintain an action for damages for retaliation in response to an action for possession based on non-payment of rent. This failure, coupled with the statutory language which provides that the prohibitions against retaliation are subject to the operator's right to evict for the tenant's default in the payment of rent, indicates to us a legislative intent to preclude the tenant's recovery of damages for retaliation in the park operator's action for possession, if the tenant is in default in the payment of rent. Consequently, we hold that the trial court erred in failing to direct a verdict in favor of the plaintiff. Therefore, plaintiff's first assignment of error is sustained.

In view of our response to the first assignment of error, we find the second and third assignments of error moot.

Since we have determined that the trial court did not have jurisdiction over the action against the Hunts, our response to the cross-appeal is limited to the cross-appeal of Newman.

In his first assignment of error on cross-appeal, Newman argues that the trial court erred in reducing the verdict of the jury to the court's jurisdictional limit of $3,000. Newman contends that attorney fees are in the nature of costs and, therefore, should not be included in determining the jurisdictional limit of the court. We disagree.

We concur with the Franklin County Court of Appeals which held in *Dyche Real Estate Fund* v. *Graves, supra,* that the award of attorney fees under R.C. 5321.04(B) of the Landlord-Tenant Act, the companion to R.C. 3733.10(B), is "in effect a part of the *damages* awarded to the tenant for the proving of the landlord's proscribed acts." (Emphasis added.) *Dyche, supra,* at 155. Thus, we hold that the award of attorney fees under R.C. 3733.10(B) is in the nature of damages, not costs, and any verdict consisting of damages and attorney fees must therefore be limited to the monetary jurisdiction of the trial court. Therefore, the first assignment of error in the cross-appeal is overruled. We note, of course, that in view of our response to the plaintiff's first assignment of error, this assignment of error is moot, but for the sake of judicial economy feel compelled to respond.

In Newman's second assignment of error on cross-appeal, he asserts that the trial court erred in denying his motion for additional attorney fees. Newman argues that attorney fees accrued for time expended on post-trial motions are also recoverable under R.C. 3733.10(B).

Without addressing the specific issue raised, we hold that the assignment of error is not well-taken for the reasons stated in our holding relative to the plaintiff's fourth assignment of error. Again, Newman has submitted evidence of attorney fees by way of affidavit. This is not permissible. Accordingly, Newman's second assignment of error on cross-appeal is not well-taken and is overruled. Further, for the reasons given in our response to the first assignment of error, this assignment of error is moot.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment herein appealed from be, and the same hereby is, reversed as to Newman, and that final

judgment be entered for the plaintiff; and that the judgment appealed from as to the Hunts be reversed and that the cause be remanded to the trial court for certification to the court of common pleas.

*Judgment reversed and cause remanded.*

HENDRICKSON, P.J., and JONES, J., concur.

WHITESIDE, J., dissents.

WHITESIDE, J., of the Tenth Appellate District, sitting by assignment in the Twelfth Appellate District.

WHITESIDE, J., dissenting. Being unable to concur in the conclusions reached by the majority, I must respectfully dissent from portions of the judgment, although I concur in some of the conclusions reached by the majority but write separately thereon.

Case No. 1088 involves an eviction action brought by plaintiff Fay Gardens Mobile Home Park against defendant Newman, the original ground for eviction being solely nonpayment of rent by defendant. An answer was filed by Newman essentially admitting nonpayment of rent but alleging tender of rent, as well as raising the defense of retaliation. Newman filed a counterclaim seeking damages in the amount of $1,765 from plaintiff, as well as alleging a claim for retaliation.

Subsequently, plaintiff filed an amended complaint repeating the allegations of the original complaint, together with a new claim for possession predicated upon termination of Newman's month-to-month tenancy by appropriate notice. Defendant filed essentially the same answer and counterclaim to the amended complaint, denying, in addition, effective termination of the tenancy.

Case No. 1089 involves a similar action commenced by plaintiff Fay Gardens Mobile Home Park against defendants Richard and Peggy Hunt. They filed a joint answer and counterclaim, raising as defenses a general denial, retaliation and violation by plaintiff of R.C. 3733.11, allegedly requiring a one-year minimum tenancy. By their counterclaim, they sought damages for retaliation in the amount of $1,000, return of the entire amount of $3,200 paid in rent for alleged breach of the warranty of habitability, together with a reasonable attorney fee. Similar damages were alleged with respect to an alleged violation of R.C. 3733.10 and 3733.11. The prayer sought $4,200 in damages, which is in excess of the monetary jurisdiction of the trial court, the Clermont County Court. Subsequently, the Hunts filed an amended answer and counterclaim alleging additional damages for a total of $8,100. No one raised the issue, however, of monetary jurisdiction until trial.

These two actions, together with several others brought by plaintiff, were consolidated by order of the trial court. A lengthy jury trial ensued, resulting in a consent judgment for plaintiff upon its eviction claim against Newman, but a verdict in favor of Newman against plaintiff on his counterclaim for damages in the amount of $1,500, plus attorney fees in an amount of $3,600, and a judgment in favor of the Hunts and against plaintiff upon its complaint for possession of the premises upon their counterclaim against plaintiff, finding damages in the amount of $1,125 and attorney fees in the amount of $3,600. Subsequently, the trial court ordered the judgments reduced to the monetary jurisdiction of $3,000, including attorney fees, in each of the cases and assessed the costs equally against the parties.

From these judgments, plaintiff appeals and raises four assignments of error as follows:

"I. The trial court erred to the prejudice of plaintiff in overruling its motion for a directed verdict on the issue of retaliation against defendant Newman.

"II. The trial court erred to the prejudice of plaintiff in overruling its motion for judgment notwithstanding the verdict on the issue of retaliation against both defendants.

"III. The trial court erred to the prejudice of plaintiff in overruling its motion for a new trial.

"IV. The trial court erred to the prejudice of plaintiff in allowing, over its objection, the use of affidavits as to time spent on the case by the defendants' attorneys and the hourly rate of one of them."

Defendants Newman and the Hunts have also appealed and raise two assignments of error as follows:

"I. The trial court erred in ordering a reduction of the judgment to Three Thousand Dollars ($3,000) for each defendant.

"II. The trial court erred in denying the defendants' motion for additional attorneys' fees and in ordering that costs be divided equally among the parties."

The determinative issue decided by the majority with respect to the appeal of plaintiff as to defendants Richard and Peggy Hunt was not raised by the assignments of error of the parties. The majority finds that all action by the trial court is void since the counterclaim of the Hunts exceeded the monetary jurisdiction of the trial court. I respectfully disagree.

R.C. 1909.04 provides that: "* * * county courts have * * * original jurisdiction in civil actions for the recovery of sums not exceeding three thousand dollars." On the other hand, R.C. 1923.01(A) provides in part that: "* * * any judge of a county court * * * may inquire * * * about persons who have a lawful and peaceable entry into lands and tenements and hold them unlawfully and by force." This is the action ordinarily known as "forcible entry and detainer." R.C. 1923.02 provides expressly that a proceeding under R.C. Chapter 1923 may be brought "[a]gainst tenants in possession under an oral tenancy or in default in the payment of rent * * *." R.C. 1923.03 provides that: "Judgments under sections 1923.01 to 1923.14, inclusive, of the Revised Code, either in the county court, or in the court of common pleas, are not a bar to a later action brought by either party." No answer is required, but any defense may be raised at the time of trial. See R.C. 1923.06(B).

R.C. 1911.011 deals with procedure in a civil action in a county court and is in many respects in conflict with the Civil Rules. However, R.C. 1911.011(E) provides that: "In any action in a county court in which the amount claimed by any defendant in any statement of counterclaim exceeds the jurisdictional amount defined in section 1909.04 of the Revised Code, the judge shall certify the proceedings in the case to the court of common pleas." This paragraph must be read *in pari materia* with the next paragraph of the same section, R.C. 1911.011(F), which provides that:

"When the amount due either party exceeds the sum for which a county court is authorized to enter judgment, such party may in writing remit the excess and judgment be entered for the residue. Any party defendant may, at his option, withhold setting up any statement of counterclaim and make the same the subject of a separate action."

This is similar to Civ. R. 13(J), which provides that: "In the event that a counterclaim, cross-claim, or third-party claim exceeds the jurisdiction of the court, the court shall certify the proceedings in the case to the court of common pleas."

Apparently, the jurisdictional problem was overlooked by the parties and the trial court until the time of trial. The

trial court noted this jurisdictional problem to the parties, and counsel for the Hunts indicated that the counterclaim would be reduced to $4,398 but asserted that one-half of that amount would be claimed each by Richard Hunt and Peggy Hunt so that it would be within the monetary jurisdiction. The trial court quickly, and properly, indicated that, under the circumstances, the Hunts presented a single joint claim so that the total monetary jurisdiction could not exceed $3,000. Thereupon, counsel for plaintiff moved to dismiss the counterclaim as being in excess of the monetary jurisdiction. Defendants Richard and Peggy Hunt at that point agreed that the verdict would not exceed $3,000, even if evidence should be adduced for more. While counsel for plaintiff objected, still asking for dismissal of the counterclaim, the trial court allowed the case to proceed apparently upon authority of R.C. 1911.011.

Clearly, the Hunts agreed to remit the excess of any amount due them over the monetary jurisdiction of the trial court, and that judgment would be entered only for the residue, namely, $3,000, the monetary jurisdiction, in the event that the amount due would be found to exceed that amount. While this was not done in writing, it was in open court on the record. See Civ. R. 7(B) and 54(C). Unfortunately, R.C. 1911.011(F) does not indicate the time by which such party must make such remission. However, in the absence of any other limitation, it would seem reasonable that the remission would be timely, if made at the time the case would be certified to the court of common pleas pursuant to Civ. R. 13(J) and R.C. 1911.011(E).

R.C. 1911.011(E) and (F) relative to county courts are essentially similar to R.C. 1901.22(E) and (F) relative to municipal courts. With respect to Civ. R. 13(J) as applied to a municipal court, the Eighth District Court of Appeals has held that no automatic transfer and certification of the proceedings to the court of common pleas is required. See *Hersch v. Debreczeni* (1973), 33 Ohio App. 2d 235 [62 O.O.2d 349]. Rather, the Eighth District Court of Appeals held that there must first be a determination by the municipal court that a proper counterclaim has been filed. In other words, there is no automatic loss of jurisdiction merely by filing of the counterclaim, but, instead, action by the municipal court is necessary. The same would be true with respect to a county court.

While there may be a mandatory duty upon the county court to certify the proceedings to the court of common pleas, a failure to do so is not jurisdictional but, instead, error. In rejecting the claim that certification and loss of jurisdiction is automatic upon the filing of the counterclaim, the Eighth District Court of Appeals noted that a contrary rule would allow any defendant wishing to avoid jurisdiction of a particular court to deprive that court of jurisdiction by filing a pleading asserting a counterclaim for an amount in excess of the monetary jurisdiction of the court, whether or not the counterclaim in fact stated a claim for relief. Thus, the transfer of jurisdiction is not automatic but must be accomplished by an affirmative act of the county court. Until that court acts, there is no loss of jurisdiction by the county court, instead it retains jurisdiction. While the determination of the case on its merits would constitute error, if certification be required, it would not be for want of jurisdiction so long as the judgment did not exceed the monetary jurisdiction of the court.

Here, pursuant to the statutory provision, the Hunts remitted the excess of the claim above the jurisdictional limitations of the trial court when the question of necessity of the certification to the court of common pleas was raised. That the requirement of certification is procedural, rather than jurisdictional, is

evinced by Civ. R. 13(J), inasmuch as the Civil Rules are procedural in nature only and do not affect or limit jurisdiction as is expressly stated in Civ. R. 82. Jurisdiction of the county court over the action vested upon the filing of plaintiff's complaint. The court is not divested of that jurisdiction by virtue of the filing of a counterclaim by a defendant seeking damages in excess of the monetary jurisdiction of the county court. At this point, there is a procedural dilemma in that the county court has jurisdiction over plaintiff's claim but does not have monetary jurisdiction over that of the defendants asserted in a cross-claim. Procedurally, a remedy could be provided merely by dismissing the counterclaim as exceeding the court's jurisdiction. However, Civ. R. 13(J), as does R.C. 1911.011(E), provides a procedure to be followed under such circumstances constituting certifying the proceedings to the court of common pleas. This remains, however, a procedural, not a jurisdictional, matter with respect to plaintiff's complaint.

R.C. 1911.011(F) provides a remedy for a defendant who wishes to continue to pursue his counterclaim in the county court, permitting him to remit that portion of his claim which exceeds the monetary jurisdiction of the county court and to continue to pursue the matter in that court. The procedural issue raised herein is the time at which that election must be made by the defendant. The proper conclusion is that such determination to remit may be made any time up until the time that the case is certified to the court of common pleas by the county court. Here, the remission of the excess by the Hunts was made timely, and, accordingly, the trial court did not err in not certifying the case to the court of common pleas.

Turning to the assignments of error raised by the parties, I concur in the sustaining of plaintiff's first assignment of error, essentially for the reasons set forth in the majority opinion. R.C. 3733.091 read *in pari materia* with R.C. 3733.09 can lead to no other conclusion than that a landlord who successfully brings an action for possession of premises for nonpayment of rent is not liable under R.C. 3733.09(B) to the tenant for retaliatory action. The very prohibition of retaliatory action set forth in R.C. 3733.09(A), which is the gravamen of the tenant's claim for damages, in prohibiting retaliatory action does so "subject to section 3733.091 of the Revised Code."

The sustaining of the first assignment of error, however, does not render moot the second and third assignments of error as to Newman, nor does it apply to the action for retaliatory conduct under R.C. 3733.09(B) pursued by the Hunts. Rather, we should merely conclude that, with respect to Newman, the trial court submitted an issue to the jury that should not have been submitted, which submission was prejudicial since it is impossible to determine the amount of damages, if any, awarded for the alleged retaliatory conduct. Therefore, the second assignment of error is well-taken with respect to Newman. As to the Hunts, the assignment of error is not well-taken. The jury found that the Hunts were not subject to eviction pursuant to R.C. 3733.091, and there was evidence of retaliatory conduct by plaintiff in violation of R.C. 3733.091(A) permitting the Hunts to maintain an action for damages for such retaliatory conduct pursuant to R.C. 3733.09(B).

While as a practical matter, as to Newman, the issue raised was disposed of by sustaining the first assignment of error, a slightly different issue and reason for sustaining the third assignment of error as to Newman is more appropriate. Plaintiff correctly points out that the verdict of the jury for Newman was essentially equivalent to the amount of rent he paid during his tenancy. Plaintiff in effect concedes that there was a

cause of action asserted and found by the jury to have been proved by Newman for reduction in rental value of the premises, predicated upon the premises' condition being in violation of R.C. 3733.10(A) and giving rise to a cause of action, in Newman pursuant to R.C. 3722.10(B). The jury also found for Newman on the issue of liability upon the cause of action for retaliation. The issue raised by plaintiff with respect to the judgment for Newman goes to the issue of damages, not the issue of liability. In other words, excessive damages were awarded because the jury included damages for retaliatory action as well as for the condition of the premises. Thus, the trial court should have granted plaintiff's motion for new trial as to Newman upon the issue of damages only. The third assignment of error is well-taken to the extent that plaintiff is entitled to a new trial as against Newman with respect to the issue of damages.

As to the Hunts, however, the third assignment of error is not well-taken. The judgment as to the Hunts is supported by competent credible evidence both as to retaliation pursuant to R.C. 3733.09(A) and the condition of the premises pursuant to R.C. 3733.10(A) and, thus, cannot be disturbed by a reviewing court. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. Plaintiff's contention of damages being caused by the Hunts' own negligence or their failure to mitigate damages was considered by the jury and rejected. We cannot substitute our judgment for that of the jury.

Plaintiff's fourth assignment of error raises the issue of attorney fees as does the defendants' joint first assignment of error. Plaintiff contends that there was improper and insufficient evidence with respect to attorney fees which were determined by the jury; defendants contend that the matter of attorney fees is to be considered and determined by the court because they are in the nature of costs, rather than damages. Both contentions are well-taken.

In finding the determination of attorney fees to be damages which are submitted to the jury for determination, the majority relies upon the Tenth Appellate District case of *Dyche Real Estate Fund* v. *Graves* (1978), 55 Ohio App. 2d 153 [9 O.O.3d 321]. The *Dyche* decision, in which the writer participated as a member of the panel, did so state, although such determination was not necessary, as no attorney fees could be awarded since no damage was found by the jury; but the court did sustain the assignment of error relating to the issue. Unfortunately, the *Dyche* court did not analyze the issue and made no comment other than that "[t]he award of attorney fees pursuant to this statute is in effect a part of the damages awarded to the tenant for the proving of the landlord's proscribed acts." *Dyche, supra,* at 155. The Eighth District Court of Appeals has reached a contrary conclusion. Upon further reflection, the writer of this dissent recognizes the validity of the analysis of the Eighth District Court of Appeals in arriving at the conclusion that an award of attorney fees under R.C. 5321.15(C) is a matter to be committed to the discretion of the trial court, rather than the jury, as part of the costs of the action. See *Drake* v. *Menczer* (1980), 67 Ohio App. 2d 122 [21 O.O.3d 429], wherein it is stated at page 124:

"Traditionally, when a statute authorizes the award of attorneys' fees, it does so by allowing the fees to be taxed as costs. See, *e.g.,* R.C. 163.21, 309.13 and 733.61. See, also, *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177 [75 O.O.2d 224]; *Billington* v. *Cotner* (1974), 37 Ohio St. 2d 17 [66 O.O.2d 9]; *State, ex rel. Michaels,* v. *Morse* (1956), 165 Ohio St. 599, 607 [60 O.O. 531]. Interestingly, in *Sorin* v. *Bd. of Edn., supra,* at page

180, the court cited R.C. 1313.51 as a statute which provides 'for the recovery of attorney fees, *as part of the costs* of litigation' (emphasis added), despite the fact that R.C. 1313.51 does not specify how the award of fees is to be made.

"We find a similar approach to be appropriate here. The statutory language regarding damages and fees provides for an award of 'actual damages *together with* reasonable attorneys' fees' (emphasis added), R.C. 5321.02. In our view, had the legislature intended attorneys' fees to be considered a part of the awardable damages, the statute would read 'actual damages *including* reasonable attorneys' fees.' The present language necessitates a conclusion that attorneys' fees are not awardable as *damages.* * * *" See, also, *Lewis* v. *Romans* (1980), 70 Ohio App. 2d 7 [24 O.O.3d 9], and *Sherwin* v. *Cabana Club Apartments* (1980), 70 Ohio App. 2d 11 [24 O.O.3d 11].

R.C. 3733.09(B) provides in part that: "* * * The tenant may recover from the park operator any actual damages together with reasonable attorneys fees." This section deals with retaliatory action. Similarly, R.C. 3733.10(B) provides in part that: "* * * the tenant may recover actual damages resulting from the violation * * * and if he obtains a judgment, reasonable attorneys' fees, * * *." This language clearly connotes that the attorney-fees award is not part of the actual damages, both because of the language used and because of the requirement that a judgment for actual damages be recovered before the award of attorney fees is proper.

Although affidavits are appropriate under some circumstances, here plaintiff objected and asserted the lack of opportunity to cross-examine the witnesses. Thus, the affidavits were insufficient under the circumstances, especially in light of the amount of the fees involved, which exceeded the monetary jurisdiction of the trial court, which is questionable even if the amount of costs, including fees, be excluded in determining whether the action falls within that monetary jurisdiction. As to Newman, some of the time may well have been spent in preparing to defend or ascertaining the disposition of the eviction action itself. Thus, plaintiff's fourth and defendants' first assignments of error are well-taken.

Defendants' second assignment of error is not well-taken with respect to additional attorney fees as to subsequent matters. However, there appears to be no basis for dividing the costs between the parties, especially in the case of the Hunts, who prevailed on all issues. The original judgment did not provide for splitting the costs but assessed them against plaintiff. No explanation is given by the trial court for dividing the costs in the subsequent entry overruling the motion for new trial. Defendants' second assignment of error is well-taken with respect to the modification of the original judgment so as to divide the court costs among all parties.

For the foregoing reasons, plaintiff's first and fourth assignments of error should be sustained, and its second and third assignments of error should be sustained as to Newman in case No. 1088 but overruled as to the Hunts in case No. 1089; and defendants' first assignment of error should be sustained, and their second assignment of error sustained in part and overruled in part. The judgment of the Clermont County Court in case No. 1088 should be reversed as to the issues of damages and attorney fees and affirmed in all other respects, and the cause remanded to that court for a new trial upon the issue of damages and for a new determination of attorney fees. The judgment of the Clermont County Court in case No. 1089 should be affirmed except as to the

determination of attorney fees, and that part of the judgment relating to attorney fees should be reversed, and the cause should be remanded to that court for a redetermination of the amount of attorney fees to be awarded as part of the costs of the action.